IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

F. DYANN MCDOWELL, et al.,

      Plaintiffs,

  v.                                  Civil Action 2:23-cv-2860
                                      Chief Judge Algenon L. Marbley
                                      Magistrate Judge Jolson

THE BOARD OF TRUSTEES FOR
PERRY TOWNSHIP, STARK COUNTY,
OHIO, et al.,

      Defendants,

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Change Venue under 28 U.S.C. § 1404(a). (Doc. 9). The Motion is **DENIED**.

**I.    BACKGROUND**

Plaintiffs F. Dyann McDowell and Training Marbles, Inc. ("TMI") bring this action against Defendants the Board of Trustees for Perry Township, Stark County, Ohio ("Perry Township") and Michael T. Pomesky. (Doc. 2). McDowell, an Ohio citizen, owns TMI, a corporation with its principal place of business in Franklin County, Ohio. (*Id.* at ¶¶ 1–3). Pomesky is an Ohio citizen and the former Perry Township Chief of Police. (*Id.* at ¶¶ 9–10). TMI specializes in human resource training and consulting and works with municipalities and political subdivisions throughout Ohio. (*Id.* at ¶ 76).

In June 2022, Perry Township hired TMI to conduct a human resources assessment. (*Id.* at ¶ 17). During the assessment, TMI turned its attention to Perry Township's Chief of Police, Defendant Pomesky, based upon reports of his retaliatory conduct. (*Id.* at ¶ 19). Plaintiffs allege

that Pomesky began interfering with TMI's work when he learned he was under scrutiny.  (*Id.* at ¶¶ 20–30).  Particularly, Plaintiffs allege that when McDowell was conducting interviews with employees in Perry Township, Pomesky showed up at the interview site so he could determine which employees met with her.  (*Id.* at ¶¶ 26–30).  At that point, Plaintiffs say that Perry Township expanded TMI's scope of work to include an investigation of Pomesky's interference and asked McDowell to meet with Pomesky and address his actions, which McDowell did.  (*Id.* at ¶¶ 31–33).  Plaintiffs claim that Pomesky, fearing his job was at stake, responded to the investigation by "lashing out" at McDowell and questioning her about her involvement in his possible removal.  (*Id.* at ¶¶ 34–39).

In August after McDowell and Pomesky met for a second time, Pomesky began investigating McDowell.  (*Id*. at ¶¶ 41–45).  Plaintiffs claim this was retaliation for TMI's investigation and reporting to Perry Township about Pomesky.  (*Id.* at ¶ 44).  Plaintiffs say that Pomesky made threats and instituted criminal proceedings against McDowell with the purpose to coerce her to stop investigating him, even after the Perry Township Law Director told Pomesky to "stand down."  (*Id*. at ¶¶ 47, 49–51).

But, say Plaintiffs, Pomesky only escalated his behavior.  He orchestrated the issuance of a warrant for McDowell's arrest on August 10 on misdemeanor falsification and obstructing official business charges.  (*Id.* at ¶ 51, 54).  Next, he shared the arrest warrant with the Reynoldsburg, Ohio Police Department, another one of TMI's clients.  (*Id.* at ¶¶ 61, 63).  Pomesky even called the Reynoldsburg Police Department to ensure they executed the warrant for the two non-violent misdemeanors.  (*Id.* at ¶ 64).  Plaintiffs allege that Pomesky's plan was to have her transported up to Stark County, where Perry Township is located and Pomesky had jurisdiction.  (*Id.* at ¶ 67).

Rather than be arrested, McDowell turned herself in at the Reynoldsburg Police Department, where she was taken into custody. (*Id.* at ¶ 65). McDowell spent 36 hours incarcerated at the Franklin County Corrections Center II. (*Id.* at ¶ 66). Plaintiffs say that, while in custody, she contracted an illness that still impacts her to this day. (*Id.* at ¶ 78).

Only a few days later, Perry Township voted to place Pomesky on administrative leave. (*Id.* at ¶ 69). And, ultimately, Perry Township terminated him. (*Id.* at ¶ 71). All charges against McDowell were dismissed. (*Id.* at ¶ 53). Despite providing Perry Township with an invoice for the investigation, Plaintiffs claim that Perry Township only partially paid its bill for TMI's services. (*Id.* at ¶ 123–24, 132–33).

Plaintiffs filed this action in the Common Pleas Court of Franklin County, Ohio. But, on Defendants' notice, the case was removed to the United States District Court for the Southern District of Ohio. (*See* Doc. 1). Plaintiffs' complaint alleges the following claims: false arrest, malicious prosecution, and other rights violations under 42 U.S.C. § 1983 against Defendants collectively; false arrest and unlawful detention under Ohio law against Defendants collectively; abuse of process, intimidation, and intentional infliction of emotional distress against Pomesky; and negligent retention/supervision and breach of contract against Perry Township. (Doc. 2 at ¶¶ 80–153). Plaintiffs seek compensatory and punitive damages. (*Id.* at 17–18).

Now, Defendants move to transfer this case to the United States District Court for the Northern District of Ohio. (Doc. 9). The Motion has been fully briefed. (Docs. 9, 13, 14).

## II.   STANDARD

Defendants' motion is governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." The Rule "is

3

intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and quotations omitted). Accordingly, a motion to transfer under § 1404(a) requires the district court to consider several case-specific factors. *Id.*

As a threshold matter, a court must determine "whether the action 'might have been brought' in the transferee court." *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). "An action 'might have been brought' in a transferee court, if the court has jurisdiction over the subject matter of the action, venue is proper there[,] and the defendant is amenable to process issuing out of the transferee court." *Schoenfeld v. Mercedes-Benz USA*, *LLC*, No. 3:20-CV-159, 2021 WL 3579016, at *1 (S.D. Ohio Aug. 13, 2021) (citing *Sky Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000)).

If the action might have been brought in the transferee court, the Court must determine whether transfer is justified for "the convenience of parties and witnesses," and "in the interest of justice[.]" 28 U.S.C. § 1404(a). In making this determination the Court weighs both the private interests of the litigants and public interests. *See Kay*, 494 F. Supp. 2d at 849. The factors relating to private interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 850 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). As for the public-interest factors, they "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft Co.*, 454

4

U.S. at 241 n.6 (internal quotation marks and brackets omitted).

"The moving party has the burden of establishing the need for a transfer of venue." *Kay*, 494 F. Supp. 2d at 849–50 (citation omitted). And importantly, "[s]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. *Van Dusen v. Barrack*, 376 U.S. 612, 645–46, 84 S. Ct. 805, 824, 11 L. Ed. 2d 945 (1964); *see Shanechain v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow for transfer . . . if that transfer would only shift the inconvenience from one party to another.").

## III. DISCUSSION

As explained below, the Northern District is a proper forum for this litigation, but transfer is not warranted.

### A. *The Northern District is a Proper Forum*

It is undisputed that this action might have been brought in the Northern District of Ohio. (Doc. 9 at 3; *see* Doc. 13). The Northern District has subject-matter jurisdiction over the action because the complaint arises under federal law. 28 U.S.C. § 1331; (*see* Doc. 2). Venue would be proper because all Defendants reside in Stark County, which is in the Northern District. *See* 28 U.S.C. 1391(b)(1). And lastly, Defendants are amenable to process issued out of the Northern District: Pomesky is a resident of Stark County, as is Perry Township's law director. *See* Fed. R. Civ. P. 4(j)(2)(B); Ohio Civ. R. 4.2(M); (*see* Doc. 9 at 3). Because Plaintiffs might have filed this action in the Northern District, the only question before the Court is if the balance of public and private interests weighs in favor of transfer. *Kay*, 494 F. Supp. 2d at 849. They do not.

5

B. *Plaintiffs' Choice of Forum is Relevant*

At the start, the Court notes that Plaintiffs did not bring this claim in the United States District Court for the Southern District of Ohio. Instead, they filed suit in the Common Pleas Court of Franklin County, but Defendants removed the action to federal court. (*See* Doc. 1). Generally, a plaintiff's choice of forum is given considerable weight requiring the balance of the factors to strongly favor transfer. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 946–47 (S.D. Ohio 2002) (citations omitted). But "[a] plaintiff's choice of forum . . . is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in [her] chosen forum, which was state court." *Id.* at 947 (citations omitted). That said, a plaintiff's choice of forum is "still entitled to some weight, especially if the plaintiff resides within that forum." *ITS Fin., LLC v. Advent Fin. Servs., LLC*, No. 3:10CV0041, 2010 WL 3603907, at *2 (S.D. Ohio Aug. 23, 2010) (citing *Jamhour*, 211 F.Supp.2d at 946–47), *report and recommendation adopted*, No. 3:10CV0041, 2010 WL 3586912 (S.D. Ohio Sept. 13, 2010).

Indeed, Plaintiffs reside in the Southern District and both the Franklin County Court of Common Pleas and this Court are in Columbus, something that Plaintiffs were likely aware of when they filed this action. (*See* Doc. 13 at 3). That this case was removed to federal court merely guides the Court to consider the balance of the factors without the backdrop of considerable deference to the Southern District, but there is a thumb on the scale in Plaintiffs' favor. *See ITS Fin., LLC*, 2010 WL 3603907, at *2; *cf. Abercrombie & Fitch Co. v. Ace Eur. Grp., Ltd.*, No. 2:11-CV-1114, 2012 WL 2995171, at *5 (S.D. Ohio July 23, 2012) ("Because Abercrombie originally filed in state court, the Court accords its choice of an Ohio forum significant weight, but not the substantial deference it might otherwise receive.").

C. *The Private Interests Do Not Weigh in Favor of Transfer*

Defendants argue the private interests are best served by transferring this action to the Northern District. They assert that "all defendants, most witnesses, and most, if not all, documents are located in the [Northern District]." (Doc. 9 at 4). They further claim "all witnesses apart from Plaintiff" reside in the Northern District and "all defendants and most witnesses" would be required to travel four hours round trip to proceedings in the Southern District of Ohio. (*Id*. at 5). In response, Plaintiffs claim that there are at least seven potential witnesses that reside in the Southern District. (Doc 13 at 5). Not to be outdone, Defendants reply that there are at least ten potential witnesses that reside in the Northern District. (Doc. 14 at 3). In other words, potential witnesses reside in both Districts.

Because there are witnesses and documents located in both Districts, transferring this action to the Northern District would "serve[] merely to shift the inconvenience" from Defendants to Plaintiffs, which is inconsistent with the statutory language and purpose of § 1404(a). *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *4 (S.D. Ohio Mar. 16, 2020) (citation and quotations omitted); *see Van Dusen*, 376 U.S. at 645–46, 84 S. Ct. at 824. Additionally, the Court is confident that the parties can work together to conduct discovery in such a way to lessen inconvenience to the greatest extent possible, especially given that it seems that all evidence is in Ohio. For example, the parties may agree to conduct depositions virtually or send documents electronically. All things considered, the private interests are neutral and do not weigh in favor of transfer.

D. *The Public Interests Do Not Weigh in Favor of Transfer*

Defendants also argue that public interests are best served by transferring the action to the Northern District. First, they say that the Northern District is less busy. (Doc. 9 at 6). They note

7

that the Northern District had, as of March 2023, 5,660 cases pending while the Southern District had 21,971 cases pending. (*Id.*). Yet, the current disparity is partially due to "this Court's handling of one of the largest multidistrict litigation cases in the country: *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation, 2:18-md-2846*." *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *20 (S.D. Ohio Apr. 25, 2023). In response to this, Defendants argue that the Southern District was more heavily congested than the Northern District in 2017 before the multidistrict litigation cases began. (Doc. 14 at 3–4). But docket congestion from six years ago does little to answer the question of if the Southern District will be unable to achieve a prompt resolution of this case now. More importantly, the Court finds that either District is well suited to resolve the matter efficiently. As such, the factor is largely neutral.

Next, Defendants argue that the Northern District has a greater local interest in the matter. "The primary local-interest considerations are the parties' connections to the local forum and the location of the injury." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 500 (6th Cir. 2016). Both sides have valid arguments that connect this case with their desired forum because the events at issue span both Districts. On one hand, aspects of TMI's performance of the contracts with Perry Township, including McDowell's interviews with employees; Pomesky's alleged interference with TMI's investigation; and Pomesky's alleged orchestration of McDowell's arrest occurred in the Northern District. On the other hand, other aspects of TMI's performance of and Perry Township's alleged breach of the contracts, and, more importantly, McDowell's arrest and 36-hour detention occurred in the Southern District. Also, Defendants knew when they contracted with TMI that they were hiring a company located in the Southern District. Additionally, as alleged, Defendants wasted public resources in both localities: Perry Township's employees' alleged misconduct occurred in the Northern District, and McDowell's potentially unjustified

8

arrest and detention occurred in the Southern District.

Simply put, there are real interests on both sides. The issues of this case span both localities, but no issue weighs so heavily that it overshadows the connection to the other locality. So, this factor is also neutral.

*****

Where both sides of the scale have weight, courts routinely deny motions to transfer. *See e.g.*, *U.S., ex rel., Roby v. Boeing Co.*, No. C-1-95-375, 1998 WL 54976, at 3 (S.D. Ohio Jan. 21, 1998) (denying transfer because "[a]t best, we believe the Parties' reasons both for and against transfer are balanced"); *DISC Env't Servs., Inc. v. Usher Oil Co.*, 343 F. Supp. 3d 705, 713 (N.D. Ohio 2018) (giving plaintiff's forum preference less deference because the action was for declaratory judgment but still denying transfer because defendant "has not shown that the balance of factors barely, if at all, tilts in its favor"); *Doe S.W*, 2020 WL 1244192, at *4 (denying transfer because defendant only demonstrated that a change in venue would be slightly more advantageous). The Court comes to the same conclusion here and finds that Defendants have not satisfied their burden.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Change Venue (Doc. 9) is **DENIED**.

IT IS SO ORDERED.

Date: November 8, 2023 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

9