IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| F. DYANN MCDOWELL, et al., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:23-cv-02860 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| THE BOARD OF TRUSTEES FOR | : | Magistrate Judge Kimberly A. Jolson |
| PERRY TOWNSHIP, STARK COUNTY, | : | |
| OHIO, et al., | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before this Court on Defendants' Motions for Summary Judgment. (ECF Nos. 54, 56.) For the reasons that follow, this Court **DENIES** Defendants' Motions for Summary Judgment as to the breach of contract claim for the HR assessment against Perry Township and the abuse of process claim against Michael Pomesky. This Court **GRANTS** the Defendants' Motions for Summary Judgment as to all other claims.

## I.    BACKGROUND

### A.  Factual Background

In August 2023, Plaintiffs F. Dyann McDowell ("McDowell") and Training Marbles, Inc. ("TMI") filed a complaint in the Court of Common Pleas in Franklin County, Ohio. (ECF No. 2). This case arises from Defendant Board of Trustees for Perry Township ("Perry Township") entering into a service agreement to retain TMI to conduct a human resources assessment. (*Id.* ¶ 17). Allegedly, before the assessment, there were concerns that Defendant Michael T. Pomesky, former Perry Township Chief of Police, retaliated against various employees. (*Id.* ¶ 23).

McDowell made several pertinent allegations, detailed here. During the assessment, McDowell interviewed Perry Township employees, and some expressed concerns about potential

retaliation by Pomesky if the employee participated in the interview. (*Id.* ¶¶ 22, 24). Pomesky loitered in the maintenance garage on the day of the interviews so he could monitor which employees met with McDowell. (*Id.* ¶ 27). McDowell notified Perry Township of her concerns about Pomesky, and Perry Township entered into an additional agreement for TMI to investigate Pomesky. (*Id.* ¶¶ 31, 32). Pomesky inquired whether McDowell was involved in his possible removal. (*Id.* ¶ 38). Subsequently, on August 4, 2022, McDowell became suspicious that Pomesky had discovered where she lived by pulling a LEADS inquiry on her, a confidential system used by law enforcement to run checks on people. (ECF No. 34 at 13–14). McDowell became "on guard" after Pomesky asked her how she liked living in Reynoldsburg, despite her never revealing that information to Pomesky, or to anyone else. (*Id.* at 14–15, 66). Accordingly, McDowell told Pomesky she received notification that a LEADS report was pulled on her. (*Id.* at 15). Pomesky claims he felt obligated to investigate McDowell's claim because unauthorized LEADS inquiries are a serious matter that may lead to career altering outcomes such as termination. (ECF No. 32 at 154, 167–68). The investigation was marked as non-criminal. (ECF No. 2 ¶ 45; 56 at 6).

Pomesky continued his investigation of McDowell, concluded McDowell's report about a LEADS inquiry on her was false, and presented this conclusion with to local prosecutor on or around August 7, 2022. (ECF Nos. 2 ¶¶ 45–46; 56 at 7–8). The prosecutor found probable cause existed for falsification and obstruction of official business charges against McDowell. (ECF No. 56 at 7). The prosecutor reviewed and signed off on the charges, which were later presented to Judge Fitcher—who agreed with the prosecutor's determination and issued the arrest warrant for McDowell. (*Id.* at 8).

On August 10, 2022, Pomesky called McDowell in an attempt to serve a summons on her. (ECF No. 56 at 8). Receiving no answer, Pomesky requested interdepartmental aid from the

Reynoldsburg Police the next day to execute the arrest warrant issued by Judge Fitcher on McDowell. (*Id.*). That same day, McDowell turned herself in to the Reynoldsburg Police and ultimately spent 36 hours incarcerated at the Franklin County Corrections Center. (ECF No. 2 ¶¶ 65, 66). According to Plaintiffs, the charges were eventually dismissed in McDowell's favor. (*Id.* ¶ 53). Defendants, however, note that McDowell pleaded guilty to the falsification charge, while the obstruction charged was dropped. (ECF Nos. 56 at 9, 54 at 4). McDowell was released on August 12, 2022. (ECF No. 2 ¶ 68).

On August 16, 2022, Pomesky was placed on administrative leave, in part, because of McDowell's arrest for minor misdemeanor offenses which typically would lead to a summons. (*Id.* ¶¶69–70; ECF Nos. 58 at 57–60; 60-1 at 34–36). Pomesky remained on leave until his employment was terminated by the Perry Township police in October, 2022. (*Id.* ¶ 71).

### B.  Procedural History

Plaintiffs filed a complaint against Perry Township and Pomesky alleging false arrest under § 1983 and Ohio law, and malicious prosecution under § 1983. Plaintiffs also brought the "alternate" claim of abuse of process against Pomesky. Other state law claims included a claim for intimidation, intentional infliction of emotional distress, negligent retention/supervision, breach of contract, civil liabilities for criminal acts under Ohio law, and *Monell* claims. (ECF No. 2).

The case was removed by Defendant Pomesky on September 5, 2023, for federal question jurisdiction. (ECF No. 1). On September 25, 2023, Defendants moved to transfer venue to the Northern District of Ohio. (ECF No. 9). Plaintiffs opposed and the transfer motion was denied. (ECF Nos. 13; 18).

On July 12, 2024, Defendants filed their initial motions for summary judgment. (ECF Nos. 30; 33; 35). After requesting extensions, however, on August 28, 2024, Plaintiffs filed a motion

requesting dismissal of the federal claims and a remand. (ECF No. 2). Only Defendant Pomesky opposed the Motion. (ECF No. 51). This Court granted dismissal of the following claims:

- Claim One for False Arrest under 42 U.S.C. § 1983;

- Claim Three for Malicious Prosecution under 42 U.S.C. § 1983; and

- Claim Eleven seeking to hold Defendant Perry Township liable for Claim One and Claim Three under *Monell* and 42 U.S.C. § 1983.

(ECF No. 53 at 17). Accordingly, the following claims remain:

- Claim Two for False Arrest Under Ohio Law

- Claim Four for Abuse of Process

- Claim Five for Intimidation

- Claim Six for Intentional Infliction of Emotional Distress

- Claim Seven for Negligent Retention/Supervision

- Claim Eight for Breach of Contract Assessment

- Claim Nine for Breach of Contract Investigation

- Claim Ten for Civil Liabilities for Criminal Acts Under Ohio Law

The Defendants now move for summary judgement as to the remaining claims. (ECF Nos. 54, 56).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251–52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III.    ANALYSIS

### A.  Supplemental Jurisdiction

In this Court's March 11, 2025, Opinion & Order (ECF No. 53), this Court denied Plaintiffs' request to dismiss all federal claims and to remand all remaining state claims. (ECF No. 53 at 17). This Court reasoned that because Plaintiffs' claim for civil liability for criminal acts under O.R.C. § 2307.60 (Claim Ten) involves a federal question, it would not "decline to exercise supplemental jurisdiction" because it had not "dismissed all claims over which it had original

5

jurisdiction." (*Id.* 16–17). Now, Defendant Michael Pomesky moves for summary judgement as to that claim (Claim Ten). (*See* ECF No. 56 at 14–20). Plaintiffs, however, do not oppose Pomesky's arguments for summary judgment. (ECF No. 63 at i n.2). Accordingly, this Court must make a determination regarding the remaining state law claims.

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (citation omitted). The Supreme Court, however, has held that there is "no categorical rule" stating that pretrial dismissal of all federal claims bars a court from deciding the remaining state law claims. *Id.* at 1254 (citing *Rosado v. Wyman,* 397 U.S. 397, 405 (1970)). Rather, courts should consider "judicial economy, convenience, fairness, and comity." *Id.*

Here, the Defendants have submitted two rounds of summary judgement briefing to this Court. Further, both parties have conducted multiple depositions and closed discovery. Given the significant amount of briefing that has already occurred, the fact that discovery has closed, and the use of judicial resources so far, it would be in the interest of judicial economy to retain jurisdiction over the state law claims. *See Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir. 1991) (district court did not abuse discretion in retaining jurisdiction over state law claims when discovery had closed); *compare Doe v. Foster*, 2019 WL 6770094, *6 (N.D. Ohio Dec. 12, 2019) (finding it appropriate to decline supplemental jurisdiction where parties had not engaged in discovery or filed summary judgement motions). Accordingly, this Court will retain jurisdiction over the state law claims.

### B. False Arrest/Unlawful Detention Claim Against Perry Township and Pomesky

Defendants argue that Plaintiffs' false arrest claim fails as a matter of law because there was probable cause to arrest McDowell. (ECF Nos. 54 at 7, 56 at 17). Further, Pomesky asserts that the false arrest claim against him fails as a matter of law because he did not actually arrest her or issue the arrest warrant. (ECF No. 56 at 18). Plaintiffs, however, do not address these arguments in their opposition motion. (*See* ECF No. 63). This Court finds that Plaintiffs' failure to respond to Defendants' Motions for Summary Judgment amounts to abandonment of the false arrest claim. *Williams v. Chuvalas*, 2017 WL 5157802, *2 (S.D. Ohio Nov. 7, 2017) (finding plaintiff's failure to respond to defendant's motion for summary judgment amounted to abandonment of plaintiff's claims against the defendant); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (finding summary judgment proper where plaintiff failed to respond to arguments raised by defendant in a summary judgment motion). As such, this Court finds there is not a genuine dispute of material fact regarding the false arrest claim. Accordingly, the Defendants' Motions for Summary Judgment as to the false arrest claim are **GRANTED**.

### C. Claims Against Perry Township

Plaintiffs sue Perry Township both for the tort of negligent retention/supervision and for breach of contract for the HR assessment and the Pomesky investigation.

#### 1. Negligent Retention/Supervision

Under Section 2744 of the Ohio Revised Code, political subdivisions are generally not liable for torts in connection with governmental or proprietary functions. *See* O.R.C. § 2744.02(A)(1). There are five circumstances, however, where a municipality is *not* entitled to blanket immunity: "(1) [the] injury or damage is caused by a municipal employee's negligent operation of a motor vehicle[;] (2) **the losses are due to the negligent performance of employees with respect to proprietary functions of a political subdivision**[;] (3) [the] damages are the

result of a municipality's negligent failure to keep public roads in repair[;] (4) [the] damages are the result of a physical defect on the grounds of public buildings used for government functions[;] and (5) civil liability is expressly imposed by another provision of the Ohio Revised Code." *Foster*, 2019 WL 6770094 at *5 (citing O.R.C. § 2744.02(B)) (emphasis added). If any exception applies, "the burden shifts, and the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Smith v. City of Lorain*, 2018 WL 3374079, *9 (N.D. Ohio July 11, 2018) (citation omitted).

Section 2744.01's definition of "proprietary function" includes various functions such as the operation of a hospital, the design and maintenance of a public cemetery, the establishment, maintenance, and operation of a utility, including the upkeep of a sewer system, and the operation of a public stadium. *See generally* O.R.C. § 2744.01(G)(2). Its definition of "governmental function" includes "the provision or nonprovision of police." O.R.C. § 2744.01(C)(2)(a).

Defendant Perry Township argues that, as a political subdivision, it enjoys statutory immunity under Ohio's Political Subdivision Tort Liability Act for the alleged negligent retention and supervision of Pomesky. (ECF No. 54 at 11). Perry Township contends that Pomesky's investigation that led to the subsequent prosecution of McDowell was unequivocally a governmental function and therefore it is entitled to immunity under Ohio Revised Code Section 2744. (*Id.*). As further support, Perry Township relies on *Kammeyer v. City of Sharonville*, finding that police services have always been deemed a government function, and not a proprietary function. 311 F. Supp. 2d 653, 661 (S.D. Ohio 2003).

Plaintiffs assert that Perry Township is not entitled to immunity because the management of employees is a proprietary function that falls under an immunity exception in O.R.C.

§ 2744.02(B). (ECF No. 63 at 24). Specifically, Plaintiffs counter that the negligent retention claim is solely based on Perry Township's failure to manage its employees, which they argue is a proprietary function. (ECF No. 63 at 24).

Plaintiffs make no argument that the management of township employees is akin to one of the defined proprietary functions such as the establishment of a utility or maintenance of a public stadium. *See Mason v. Bexley City School Dist.*, 2010 WL 987047, *25 (S.D. Ohio Mar. 15, 2010) (finding immunity where plaintiff failed to allege the conduct at issue constituted a proprietary function). Despite Plaintiffs' unsupported assertions to the contrary, the hiring, training, and supervision of employees is not a proprietary function, nor does it satisfy another exception that would defeat immunity. *See McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, ¶ 30 ("Nothing in the plain language of this statute provides an additional exception that imposes liability on the political subdivision for its actions in hiring, training, or supervising an employee[.]"); *see also Westbrook v. City of Cincinnati*, 667 F. Supp. 3d 665, 673 (S.D. Ohio 2023) ("[The Code] provides municipal corporations broad immunity against claims for negligence, including negligent retention.").

Thus, this Court finds that the underlying incident involving Pomesky's investigation of McDowell and the resulting prosecution both equate to governmental functions. *See Foster*, 2019 WL 6770094, at *5 (finding immunity where city employees were engaged in the governmental functions of a criminal investigation and prosecution); *see also Snyder v. United States,* 990 F. Supp. 2d 818, 847 (S.D. Ohio 2014) ("The events that occurred . . . were born of an employee of a political subdivision performing a 'governmental' function, the provision of police services.").

Lastly, Plaintiffs' argument that Perry Township fails to cite any defenses in O.R.C. 2744.03 is unavailing. (ECF No. 63 at 24). Under Section 2744, the burden only shifts

to Perry Township to "reinstate immunity" if an exception to immunity under § 2744.02(B) applies. *Snyder*, 990 F. Supp. 2d at 846. As analyzed above, no exception exists here.

Accordingly, this Court concludes that the retention and supervision of Pomesky was a governmental function for which Perry Township is immune from liability. Perry Township's Motion for Summary Judgment as to the negligent retention claim is **GRANTED**.

### 2. *Breach of Contract*

To state a breach of contract claim, a plaintiff must demonstrate: (1) a valid contract existed; (2) there was performance under the contract by the plaintiff; (3) the contract was breached by the defendant; (4) and that plaintiff suffered damages as a result of the breach. *Jarupan v. Hanna*, 2007-Ohio-5081, ¶ 18 (10th Dist.); *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). Here, the parties dispute whether there were two valid contracts versus one, whether there was performance of the contract(s), and what payment was owed to Plaintiffs.

Plaintiffs assert two breach of contract claims against Perry Township: (1) breach of contract for the HR assessment; and (2) breach of contract for the investigation of Pomesky. (*See* ECF No. 63). This is because Plaintiffs argue that there are two distinct contracts at issue: the contract between Plaintiffs and Perry Township to conduct and HR assessment of the Township, and a separate and distinct contract for Plaintiffs to conduct an investigation of Pomesky. (*Id.* at 24–26). Perry Township, however, challenges the existence of any contract for the investigation of Pomesky. Rather, it argues that only one contract existed between Perry Township and Plaintiffs, and that Plaintiffs failed to perform under that contract. (ECF Nos. 54 at 12–13; 66 at 17–18).

In Perry Township's view, it only paid for the partial completion of the HR assessment that it received. (*Id.*). Given that the initial contract already included investigating the police

10

department's culture, there was no meeting of the minds to establish a second contract for work that was already expected under the initial contract. (ECF No. 66 at 18). Moreover, Perry Township contends that it lost faith in the reliability of Plaintiffs' assessments in light of McDowell's lies regarding the LEADS report. (ECF No. 54 at 14–15). Perry Township argues that Plaintiffs' HR assessment failed to include substantive information and contends that McDowell's arrest was not a bar to Plaintiffs' performance under the contract. (ECF No. 66 at 19). Lastly, Perry Township asserts that McDowell's statements regarding an additional meeting with the Board to be held after the August 4, 2022, meeting indicate performance was incomplete. (*Id.*).

Plaintiffs retort that Perry Township benefited from the work TMI completed, yet Perry Township failed compensate TMI for all of its work. (ECF No. 63 at 24–25). Plaintiffs further argue that had McDowell not been arrested, and had they been made aware of any failure to perform, Plaintiffs would have completed performance, had Perry Township not discontinued any further work. (*Id.*).

### a. The HR Assessment

First, this Court will address the initial breach of contract claim as to the HR assessment of Perry Township. The parties do not dispute that a valid contract existed between Plaintiffs and Perry Township regarding completion of the HR assessment. Notably, however, the parties do dispute whether Plaintiffs' submission of the HR assessment to the Trustees constituted performance under the contract. (ECF Nos. 54 at 12; 63 at 25–26). Thus, this Court's analysis will focus on whether there was performance under the second element of the breach of contract claim. The contract states that TMI will provide Perry Township "with a report with recommendations expected on or before August 5th, 2022." (ECF No. 2, Exhibit 1). The assessment was to include

a "professional opinion on the company's safety and health performance, programs, and degree of implementation, as well as make recommendations for improvement." (*Id.*).

It is also of note that McDowell attests that the expectations under the contract had evolved, given how events unfolded with Pomesky. (ECF No. 34 at 108). According to McDowell, Trustee Miller requested the assessment on August 4, 2022, so that it could be used in the Board meeting in which there was an agenda to discuss concerns about Pomesky's performance. (*Id.* at 61, 109). On that same day, she "pushed up" delivery and sent Trustee Miller the assessment labeled "Draft." (*Id.*) McDowell asserts that had she not been arrested she would have expanded upon the version of the assessment she sent to Trustee Miller. (*Id.* at 123).

Due to these conflicting factual contentions regarding expectations under the contract, this Court finds that there is a genuine issue of material fact as to whether Plaintiffs performed under the contract. First, McDowell's comments about wanting to add "substantive information" or to expand on the assessment appear to be in reference to the quality of the work done, as opposed to a definitive statement as to whether the work was completed. Additionally, the fact that there was another meeting scheduled that never occurred due to McDowell's arrest is not dispositive, as the contract does not make explicit that a certain number of meetings with the Board was required—only that an assessment was to be delivered. (*See* ECF No. 2, Exhibit 1).

Moreover, Perry Township's contention that Plaintiffs were to "issue a professional opinion on the company's safety and health performance . . ." characterizes the expectations under the contract to be narrower than what the contract actually states. (ECF No. 54 at 13). Perry Township also asserts that Plaintiffs' six-page assessment fails to satisfy the terms of the contract and instead calls for the discipline of Pomesky. (ECF No. 54 at 13). In reality, the report only discusses Pomesky for half a page. (*See* ECF No. 34-5). As mentioned above, Plaintiffs were to

provide an HR assessment of the company's safety and health performance, programs, and degree of implementation, as well as make recommendations for improvement. Accordingly, in addition to discussing Pomesky, Plaintiffs addressed Perry Township's hiring and promotions, the climate of various departments, the Township's mission, performance evaluations, and leadership training. (*See* ECF No. 34-5).

Additionally, uncontested evidence suggests that conversations following the written contract adjusted the expectations under the initial contract. For instance, the due date of the report was moved forward, and Plaintiffs acted accordingly. Further, any additional performance under the initial contract, such as meeting with the Board of Trustees following the August 4, 2022, meeting, was certainly impacted by the LEADS investigation and McDowell's arrest.

Upon review of the submitted assessment, this Court finds that a reasonable jury could determine that the assessment complied with the requirements listed in the contract. (*Id.*). Thus, there exists a genuine issue of material fact as to whether Plaintiffs performed under the contract. Accordingly, Perry Township's Motion for Summary Judgment as to the HR assessment breach of contract claim is **DENIED**.

### b. The Pomesky Investigation

Next, this Court will address the second breach of contract claim as to the alleged second contract between the Parties that included the investigation of Michael Pomesky. Here, the Parties dispute the existence of a contract for the investigation of Pomesky; thus, the analysis will focus on the first element of the breach of contract claim. Perry Township asserts that there was no written contract regarding a separate investigation of Pomesky, nor was there a meeting of the minds providing that the Township would pay Plaintiffs more for a separate investigation in addition. (ECF Nos. 54 at 12; 66 at 18). Plaintiffs, however, asserts that there were verbal

conversations that established a second contract for an additional $2,000 to investigate Pomesky. (ECF No. 34 at 112). This Court finds that no second contract existed.

Under Ohio law, a contract must include "an offer, acceptance, consideration, a manifestation of mutual assent, and a meeting of the minds as to the essential terms of the contract." *McFadden v. Charter Commc'ns, Inc.*, 2024-Ohio-4564, ¶ 14 (9th Dist.). Further, "where a written contract is altered or modified by oral agreement, new and distinct consideration is required, or 'it must be a valid and binding contract itself, resting upon some new and distinct consideration.'" *Wells Fargo Bank, N.A. v. Baldwin*, 2012-Ohio-3424, ¶ 14 (12th Dist.).

It is undisputed that there were conversations between the Parties regarding the investigation of Pomesky. (*See* ECF No. 66 at 18). However, this Court finds that Plaintiffs' breach of contract claim as to the investigation of Pomesky fails because of a lack of consideration. Plaintiffs fail to present any evidence that supports there was a bargained for benefit between the parties for the separate investigation of Pomesky. Rather, even in the light most favorable to Plaintiffs, it is clear that the initial contract between the Parties already encompassed Plaintiffs' investigation of Pomesky under work that was to be performed as part of the HR assessment. Further, while Plaintiffs cite in an invoice that Perry Township owed Plaintiffs $2,000 for the investigation, Plaintiffs fail to assert any conversation in which there was a meeting of the minds between the Parties establishing that Plaintiffs would investigate Pomesky for a specified cost. (See ECF No. 57-2, Exhibit 20). Lastly, to defeat any assertion that the original contract was modified to add the Pomesky investigation to the initial contract, Plaintiffs fail to cite to new and distinct consideration. As such, Perry Township's Motion for Summary Judgment as to the breach of contract claim for the investigation of Pomesky is **GRANTED**.

14

### D.  Claims Against Michael Pomesky

#### 1.  Immunity Under Ohio Revised Code Section 2744

Under Ohio law, an employee of a political subdivision who is sued in his or her personal capacity is immune unless: "(a) [that] employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [that] employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." O.R.C. § 2744.03(A)(6)(a)–(c); *see also Snyder*, 990 F. Supp. 2d at 846.

"For purposes of § 2744.03(A)(6)(b), 'malicious purpose' is the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Day v. DeLong*, 358 F. Supp. 3d 687, 708 (S.D. Ohio 2019). "'Bad faith' evinces a 'dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.'" *Id.* "'Wanton misconduct' is 'the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.'" *Id.*

Pomesky asserts that he is immune from all state claims pursuant to Ohio Revised Code Section 2744. (ECF No. 56 at 21). Plaintiffs argue that even if Pomesky is entitled to immunity, he cannot assert it because he acted outside of the scope of his employment with a malicious purpose and in bad faith. (ECF No. 63 at 20-22.).

As discussed above, Pomesky's choice to seek an arrest warrant was within the scope of his duties as a police officer. Accordingly, while this Court acknowledges some evidence supports that Pomesky wanted to thwart McDowell's investigations, Plaintiffs' arguments that Pomesky's acts were outside the scope of his employment fail. Pomesky did not issue the arrest for McDowell

through unlawful or unjustified conduct. Rather, Pomesky had probable cause to believe she had committed a misdemeanor. Thus, Pomesky acted within the scope of his employment.

Even so, Pomesky is not entitled to immunity purely because his conduct was within the scope of his duties as a police officer.[1] This Court must also consider whether Pomesky acted with malicious purpose or in bad faith. Questions involving malice, bad faith, or wanton or reckless behavior are generally presented to the jury. *Schoenfield v. Navarre*, 2005-Ohio-6407, ¶ 24 (6th Dist.). Accordingly, summary judgment is appropriate where the defendant's actions show that he did not intend to cause harm, did not breach a known duty with an ulterior motive or ill will, and did not have a dishonest purpose. *Id.* Here, however, there is evidence that Pomesky may have had a dishonest purpose. Plaintiffs point out that Pomesky closed his initial investigation into McDowell, only to reopen it after he felt his job may be in jeopardy due to McDowell. (ECF Nos. 63 at 8; 62-1 at 59–62).

Additionally, Pomesky sought an arrest warrant as opposed to a summons for the misdemeanor charges which, while not illegal, was contrary to the standard practice for that type of offense. (ECF No. 60-1 at 34–36). Perry Township Police Officer, Melinda Coleman, attested that in her 15 years as an officer in Perry Township, she could not recall any other instance in which an arrest warrant was served as opposed to a summons for this type of misdemeanor. (*Id.*). Similarly, Sergeant Chad Guist stated that Department practice for nonviolent misdemeanors was to issue as summons, not to have the individual arrested. (ECF No. 61-1 at 39–41). Sergeant Guist

---

[1] Plaintiffs sue Pomesky in both his individual and official capacities. (ECF No. 2 at 2). "[W]hen an employee is sued in his official capacity, it is considered a suit against the political subdivision itself." *Snyder*, 990 F. Supp. 2d at 846. Thus, since this Court found Perry Township immune from liability, this Court also finds that Michael Pomesky is immune from liability for all state law claims alleged here related to his official capacity. *See supra* Section III.C(1).

could not identify a single instance of a misdemeanor offense being handled like McDowell's, despite having served for 27 years. (*Id.* at 40).

Viewing the evidence most favorably to the Plaintiffs, there is a factual question as to whether Pomesky acted with malice or in bad faith. *See* O.R.C. § 2744.03(A)(6)(b). Therefore, as a threshold matter, this Court does not deem Pomesky to be immune from the state law claims under Ohio Revised Code Section 2744 in his personal capacity.

### 2. Abuse of Process

To establish a claim for abuse of process under Ohio law, a plaintiff must allege the following: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) **that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed**; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St.3d 294, 298, 1994-Ohio-503, 626 N.E.2d 115, 118 (1994) (emphasis added). Ohio law supports that the "improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, 1996-Ohio-189, 662 N.E.2d 9, 14 (1996).

Pomesky argues that Plaintiffs' abuse of process claim fails on the second element because he did not have an ulterior motive in obtaining a warrant for McDowell's arrest—rather, he argues he was carrying out the process to its "authorized conclusion." (ECF No. 56 at 9–10). Further, he asserts that because McDowell contends she was arrested without probable cause, she cannot satisfy the first element of the abuse of process claim, which requires that the legal process begin with a proper form and probable cause. (*Id.* at 11).

First, Pomesky's argument that the abuse of process claim cannot stand due to Plaintiffs pleading that McDowell was arrested without probable cause fails. Plaintiffs note correctly that the abuse of process claim is stated properly in the alternative and therefore Plaintiffs are entitled to allege both regardless of consistency. (ECF No. 63 at 17); Ohio Civ. R. 8(E)(2); *accord* Fed. R. Civ. P. 8(d)(2).

Thus, the second element of the abuse of process claim is central. The question is whether Pomesky had an ulterior motive. To satisfy the second element, "[d]efendants must pervert or corrupt the proceeding to accomplish an ulterior purpose as the proceeding is underway; an abuse does not exist where there are merely multiple rationales for taking the action, one of which would be impermissible if independent." *Gillman v. Schlagetter*, 777 F. Supp. 2d 1084, 1099 (S.D. Ohio 2010) (citation omitted). Further, a footnote in *Yaklevich* provides additional meaning to the second element, stating that "there is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich*, 68 Ohio St.3d at 298 n.2. It is important to note, however, that '[t]he key factor in an abuse-of-process lawsuit 'is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action.'" *Omran v. Lucas*, 2021-Ohio-4592, ¶ 42 (7th Dist.) (citing *Yaklevich* 68 Ohio St.3d at 300).

In Plaintiffs' view, Pomesky's goal was to undermine and ultimately close McDowell's investigation into him. (*Id*. at 15). Plaintiffs support these arguments with deposition testimony from Trustee members stating that McDowell's arrest was retaliatory "nonsense." (*Id.*). Moreover, Plaintiffs contend that if Pomesky's true goal was to carry out the LEADS investigation, he would not have resorted to the extreme means of having McDowell arrested, as opposed to issuing a summons—particularly given that the underlying crimes were misdemeanors. (*Id.* at 16).

18

Relying heavily on the footnote in *Yaklevich*, Pomesky maintains that he had a valid rationale to seek the arrest of McDowell and merely carried out his LEADS investigation to its authorized conclusion. (*See* ECF Nos. 56 at 10; 67 at 4). Moreover, he retorts that it was in his discretion whether to seek the issuance of a summons for McDowell. (ECF No. 67 at 4). Pomesky also recognizes that abuse of process only occurs where someone attempts to achieve something through the courts for which they are powerless to do themselves. (*See* ECF No. 56 at 10) (citing *Kavlich v. Hildebrand*, 2009-Ohio-1090, ¶ 21 (8th Dist.)). These arguments fail to recognize that the allegations against Pomesky raise a genuine issue as to whether he did exactly that by utilizing the LEADS investigation to achieve an arrest that would undermine McDowell's separate investigation into him. (*See* ECF No. 53 at 15–16).

In *E.E.O.C. v. Spitzer Mgt., Inc.*, Spitzer management faced abuse of process claims relating to alleged retaliation against Spitzer employees for filing hostile work environment charges against the company with the EEOC. 866 F. Supp. 2d 851, 854, 871 (N.D. Ohio 2012). Specifically, two employees asserted that Spitzer initiated a lawsuit against them following their termination to silence their ongoing, protected speech against the company. *Id.* at 871. Despite the defendant's contentions that it only filed suit to stop the "slanderous and defamatory" statements being made by the employees, the *Spitzer* court found that at a minimum a question of fact remained as to whether the defendant truly "sought to stop [the statements] or to completely silence [the employees], a remedy far beyond the authority of the court." *Id.*

Similarly, here, this Court finds that there is a genuine issue of material fact as to whether, in seeking the arrest of McDowell, Pomesky only sought to hold McDowell liable for her falsifications, or actually sought to achieve a purpose outside of the proceedings by silencing McDowell and undermining the credibility of her investigation into him. *See Yaklevich*, 68 Ohio

St.3d at 300 ("[T]he key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action."); *see also Omran*, 2021-Ohio-4592, ¶ 41 (citing Restatement (Second) of Torts, § 682, cmt. a) ("The gravamen of the misconduct for which the liability * * * is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; **it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.**") (emphasis added).

Thus, this Court does not find it dispositive that Pomesky had probable cause, nor does it find that Pomesky's alleged conduct can be cleansed by the *Yaklevcich* footnote, as his alleged actions cannot merely be classified as bad intentions. Plaintiffs do not merely allege that after initiating the investigation properly, Pomesky pursued the investigation aggressively and with a warrant because he did not like McDowell. If that were the case, there would be no valid abuse of process claim. Rather, there is a genuine dispute as to whether Pomesky sought to use the arrest warrant for McDowell's LEADS falsification to undermine and effectively terminate McDowell's investigation into him, which the courts are powerless to do. While seeking the arrest was not illegal, Pomesky's break from the standard course creates a genuine issue of material fact as to an ulterior purpose to thwart McDowell's investigation that was entirely separate from McDowell's false statements regarding LEADS. Unlike using tools within the court's power solely to investigate and punish substantiated allegations of misconduct, Pomesky allegedly sought to use the process for an entirely different goal: to intimidate and discredit McDowell's separate investigation into him. Accordingly, there is a genuine issue of material fact regarding whether Pomesky perverted the process for an ulterior purpose. As such, Pomesky's Motion for Summary Judgment as to the abuse of process claim is **DENIED**.

20

*3. Intimidation*

Pomesky also asserts that Plaintiffs' intimidation claims fail because he did not use an unlawful threat or false writings in obtaining the arrest warrant for McDowell. (ECF Nos. 56 at 12). Plaintiffs, however, fail to address these arguments in their opposition motion. (*See* ECF No. 63). As discussed above, this Court finds that Plaintiffs' failure to respond to certain claims in Defendants' Motion for Summary Judgment amounts to abandonment of such claims. Accordingly, Pomesky's Motion for Summary Judgment as to the intimidation claim is **GRANTED**.

*4. Intentional Infliction of Emotional Distress*

Lastly, Pomesky contends that Plaintiffs intentional infliction claim fails because his conduct related to the LEADS investigation was not extreme or outrageous. (ECF No. 56 at 14). Further, Pomesky argues that he cannot be held liable for an act which he was legally authorized to do. (*Id.*). Plaintiffs retort that the extraordinary measures taken by Pomesky to have McDowell arrested are sufficient to support their claims. (ECF No. 63 at 18).

Under Ohio law a plaintiff must demonstrate: "(1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citation omitted). "Only the most extreme wrongs, which do great harm to the norms of a civilized society, will rise to the level of extreme and outrageous conduct." *Martcheva v. Dayton Bd. of Educ.*, 2021-Ohio-3524, ¶ 66 (2nd Dist.). "It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

21

characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Georgin v. Georgin*, 2022-Ohio-4328, ¶ 38 (12th Dist.) (citation omitted). Additionally, absent a showing of something more, it is unlikely that a party will be held liable for intentional infliction of emotional distress when the act at issue was legally authorized. *Id.* ¶ 37.

Plaintiffs cite to no case law supporting their assertion that Pomesky's behavior was extreme or outrageous. It is not enough that this Court determine Pomesky acted with some degree of malice. Given Pomesky was legally authorized to seek the arrest of McDowell as opposed to issuing a summons, this Court does not find there to be genuine issue of material fact as to the intentional infliction of emotional distress claims. Accordingly, Pomesky's Motion for Summary Judgment as to the intentional infliction of emotional distress claim is **GRANTED**.

## IV.    CONCLUSION

This Court **DENIES** Defendants' Motions for Summary Judgment as to the breach of contract claim for the HR assessment against Perry Township and the abuse of process claim against Michael Pomesky. This Court **GRANTS** the Defendants' Motions for Summary Judgment as to all other claims.

IT IS SO ORDERED.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

DATED:  December 30, 2025